T.C. Memo. 2008-148

UNITED STATES TAX COURT

VINCENT F. AND ELIZABETH R. DAILEY, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10693-06L.                    Filed June 9, 2008.

Vincent F. Dailey and Elizabeth R. Dailey, pro sese.

<u>Karen A. Rennie</u> and <u>Michelle L. Maniscalco</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case arises from a petition and an
amended petition filed in response to a notice of determination
concerning collection action(s) under section 6320[1] and/or 6330
(notice of determination).

_____

    [1]All section references are to the Internal Revenue Code in
effect at all relevant times.

We must decide whether we should sustain the determinations in the notice of determination with respect to petitioners' taxable years 2002 and 2003.[2]  On the record before us, we are unable to decide whether we should sustain those determinations. Accordingly, we shall remand this case to respondent's Appeals Office for clarification and for further consideration.

FINDINGS OF FACT

Some of the facts in this case have been stipulated by the parties and are so found.[3]

Petitioners' address shown in the petition in this case was in New York.

Petitioners have one daughter and two sons.  During 1997, petitioners' daughter was 16 years old, one of petitioners' two sons (petitioners' older son) was 14 years old, and the second of petitioners' two sons (petitioners' younger son) was 7 years old. During at least certain of the years 1997 through 2006, petitioners' daughter and/or petitioners' older son suffered from certain serious health problems.

---

[2]The notice of determination pertained to petitioners' taxable years 1999, 2002, and 2003.  Respondent concedes that respondent abused respondent's discretion in making the determinations in the notice of determination with respect to petitioners' taxable year 1999.

[3]In view of respondent's concession with respect to petitioners' taxable year 1999, we do not find facts relating to that year except where needed for clarity.

On a date not disclosed by the record before 1999, petitioner Vincent F. Dailey (Mr. Dailey) resigned from his position as a stockbroker.

During 2002 and 2003, Mr. Dailey was unemployable and/or underemployed. During those years, Mr. Dailey made substantial withdrawals from his individual retirement account (Mr. Dailey's IRA) in order to pay certain living expenses and medical bills for himself and his family.

On April 21, 2004, petitioners filed a Federal income tax (tax) return (return) for their taxable year 2002 (2002 return) which showed total tax of $109,261. When petitioners filed their 2002 return, they owed $34,361 of the total tax shown in that return, which they did not pay at that time.

On May 31, 2004, respondent assessed the total tax shown in the 2002 return, additions to tax under sections 6651(a)(1) and (2) and 6654 of $7,731.22, $2,405.27, and $2,237, respectively, and interest as provided by law of $2,020.61 for petitioners' taxable year 2002. (We shall refer to any unpaid assessed amounts with respect to petitioners' taxable year 2002, as well as interest as provided by law accrued after May 31, 2004, as petitioners' unpaid 2002 liability.)

On April 15, 2004, petitioners filed a return for their taxable year 2003 (2003 return) which showed total tax of $86,953. When petitioners filed their 2003 return, they owed

$61,895 of the total tax shown in that return, which they did not pay at that time.

On June 7, 2004, respondent assessed the total tax shown in the 2003 return, additions to tax under sections 6651(a)(2) and 6654 of $618.95 and $1,525, respectively, and interest as provided by law of $449.74 for petitioners' taxable year 2003. (We shall refer to any unpaid assessed amounts with respect to petitioners' taxable year 2003, as well as interest as provided by law accrued after June 7, 2004, as petitioners' unpaid 2003 liability.)

On July 31, 2004, petitioners submitted to respondent's collection function an offer (petitioners' July 31, 2004 offer-in-compromise) to compromise, inter alia, petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability. On a date in 2004 not disclosed by the record, the collection function rejected that offer-in-compromise.

On a date in 2004 not disclosed by the record, petitioners appealed to respondent's Appeals Office (Appeals Office) the rejection by respondent's collection function of petitioners' July 31, 2004 offer-in-compromise. On a date in 2004 not disclosed by the record, Mr. Dailey met with a settlement officer with the Appeals Office to discuss petitioners' appeal.

By letter dated February 18, 2005, the Appeals Office informed petitioners that it was sustaining the rejection by

respondent's collection function of petitioners' July 31, 2004

offer-in-compromise.  That letter stated in pertinent part:

> This refers to your offer of $18,000.00, submitted July
> 31, 2004 to compromise your liability for the tax
> period(s) ending 12/1999, 12/2002 and 12/2003.
>
> We are sorry, but your circumstances do not qualify for
> acceptance under the Effective Tax Administration
> option and we are sustaining the rejection of your
> offer.
>
> To qualify under ETA [effective tax administration],
> the collection of the full liability would create an
> economic hardship for the taxpayer and family or be
> detrimental to voluntary compliance.  This is only
> applicable if you have received incorrect advice from
> the Service.
>
> Economic hardship can exist when:  a) a taxpayer has a
> serious illness that renders him/her incapable of
> earning a living and it is reasonably foreseeable that
> taxpayer's financial resources will be exhausted pro-
> viding for care and support during the course of the
> illness; or, b) liquidation of assets to pay outstand-
> ing liabilities would render the taxpayer unable to
> meet basic living expenses; or c) the taxpayer is
> unable to borrow against equity in those assets and
> seizure/sale of the assets would have sufficient ad-
> verse consequences such that enforced collection is
> unlikely.
>
> You do not qualify under item a.  Liquidation of assets
> would not leave you unable to meet basic living ex-
> penses after the entire liability was paid.  That
> leaves item c.  At this time, you are probably unable
> to borrow against any assets.  However, you have not
> been notified that seizure is the next action to take
> place so we cannot assume that this action is being
> contemplated.  When these conditions do not exist, we
> do not have the authority to accept the offer under the
> Effective Tax Administration option.
>
> We must therefore ask you to pay your account in full
> as soon as possible. * * *

On or about October 13, 2005, respondent filed a notice of Federal tax lien with respect to, inter alia, petitioners' taxable years 2002 and 2003. On October 20, 2005, respondent issued to petitioners a notice of Federal tax lien filing and your right to a hearing (notice of tax lien) with respect to, inter alia, petitioners' taxable years 2002 and 2003.

On November 16, 2005, petitioners timely submitted to respondent Form 12153, Request for a Collection Due Process Hearing (petitioners' Form 12153), with respect to the notice of tax lien. In that form, petitioners indicated their disagreement with the notice of tax lien[4] and requested a hearing with the Appeals Office. In petitioners' Form 12153, petitioners gave the following explanation for their disagreement: "Economic Hardship, Effective Tax Admin". An attachment to petitioners' Form 12153 stated in pertinent part:

> I am in debt and am not able to afford appropriate representation.
>
> I believe my circumstances qualify as special and exceptional.
>
> I do not believe Effective Tax Administration would be adversely affected by granting me equitable and economic hardship considerations.

---

[4]In petitioners' Form 12153, petitioners also indicated their disagreement with a "Notice of Levy/Seizure". The record does not establish that respondent issued any such notice to petitioners.

I believe I have been compliant for over 30 years with all prior tax responsibilities prior to these IRA related incidents.

I request Taxpayer assistance and an advocate to assist me in resolving the current tax problems and lien hearings; to properly identify and explain my reasons for disagreement the Internal Revenue Service.

I want to amicably resolve my obligations to the Department of Treasury without adverse consequences to my family or myself. [Reproduced literally.]

By letter dated January 4, 2006, the Appeals Office acknowledged receipt of petitioners' Form 12153.

On February 24, 2006, a settlement officer with the Appeals Office who was assigned petitioners' Form 12153 (settlement officer) made the following pertinent entries in her "Case Activity Records":

Form 12153 received 11/18/2005. The CDP request was timely. * * * This S.O. has had no prior involvement with this matter in Collection or Appeals. The taxpayers maintain that they are suffering an economic hardship and believe they qualify for effective tax administration. The latter refers to an offer basis but no offer was included in the case file. The taxpayers state that the liabilities arose from IRA related transactions. Review of transcripts reveal an offer was received on 08/19/2004 and rejected on 02/18/2005. Review of ACDS [Appeals Centralized Database System] closed cases reveal that the rejection was appealed and S.O. C. Berger sustained the rejection. Checked ICS [Integrated Collection System] history but there was nothing. It appears COIC [Centralized Offer in Compromise] worked the offer. The taxpayers' total income in 2004 was $1,132 from partnership or s-corp income. However, in 2003, the total income was $273,166 and in

2002 it was $322,824.[5]  Each year reveals large medi-
cal and dental expenses. * * *  [Reproduced literally.]

The settlement officer sent petitioners a letter dated

February 24, 2006 (February 24, 2006 letter).  That letter stated

in pertinent part:

> Appeals received your request for a Collection Due
> Process (CDP) Hearing.  I have scheduled a telephone
> conference call for you on March 22, 2006 at 10:30 AM.
> This call will be your CDP hearing.
>
> *     *     *     *     *     *     *
>
> If this time is not convenient for you, or you would
> prefer your CDP hearing to be held by face-to-face
> conference at the Appeals office closest to your cur-
> rent residence * * * or by correspondence, please let
> me know within fourteen (14) days from the date of this
> letter.
>
> Your CDP hearing request regarding the filing of a
> Notice of Federal Tax Lien on the following tax periods
> was timely:  Form 1040, for tax periods * * * December
> 31, 2002 and December 31, 2003.  During your hearing
> and until any appeals become final, the legal collec-
> tion period is suspended on these tax and periods.
> However, levy action may continue if the Collection
> division determines it is appropriate, and this hearing
> relates only to the filing of a notice of tax lien.
>
> During the hearing, I must consider:
>
> - Whether the IRS met all the requirements of any
>   applicable law or administrative procedure
>
> - Any relevant issues you wish to discuss.  These
>   can include:
>
>     1.  Collection alternatives to levy such as
>         full payment of the liability, install-

---

[5]Although not altogether clear from the record, we believe
that petitioners' income for 2002 and 2003 consisted of certain
withdrawals from Mr. Dailey's IRA.

ment agreement, offer in compromise or temporary delay of collection action. Although they may not be considered an "alternative" to a notice of lien filing, these collection options may also be discussed at a lien hearing.

2.  Challenges to the appropriateness of collection action.  If this is a lien hearing, you may ask us to determine if the notice of lien filing was appropriate and if you qualify for a lien withdrawal or other lien options, such as subordination.

3.  Spousal defenses, when applicable.

- We may also consider whether you owe the amount due, but **only if** you have not otherwise had an opportunity to dispute it with Appeals or did not receive a statutory notice of deficiency.

- We will balance the IRS' need for efficient tax collection and your legitimate concern that the collection action be no more intrusive than necessary.

         *       *       *       *       *       *       *

For me to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below.  In addition, you must have filed all federal tax returns due.

- A completed Collection Information Statement (Form 433-A for individuals * * *)

- Signed tax return(s) for the following tax periods.  Our records indicate they have not been filed:
  Type of Tax:  1040
  Period or Periods:  2005

Please send me the items above within 14 days from the date of this letter.  I cannot consider collection alternatives in your hearing without the information requested above.  I am enclosing the applicable forms and a return envelope for your convenience.

In petitioners' Form 12153, petitioners placed the settlement officer on notice that they were seeking an offer-in-compromise based on effective tax administration. Nonetheless, the settlement officer did not ask petitioners in her February 24, 2006 letter to submit to her Form 656, Offer in Compromise (Form 656), and petitioners did not submit that form to her.

On March 13, 2006, the settlement officer made the following entries in her "Case Activity Records":

> Spoke with Mr. TP. He needs additional time. He will not receive his K-1 until 03/20/2006. Agreed to reschedule tel conf for 04/05/2006 @ 10:30 AM. Add info to be submitted before this date. [Reproduced literally.]

On March 30, 2006, the settlement officer received from Mr. Dailey a letter dated March 28, 2006 (March 28, 2006 letter). In that letter, Mr. Dailey indicated that petitioners' daughter had been suffering from certain serious health problems and that he and his spouse, petitioner Elizabeth R. Dailey (Ms. Dailey), had been "under a severe strain". As requested by the settlement officer in her February 24, 2006 letter, Mr. Dailey enclosed with his March 28, 2006 letter (1) completed Form 433-A that was signed by petitioners and dated March 26, 2006 (petitioners' Form 433-A) and (2) a copy of Form 1040, U.S. Individual Income Tax Return, for petitioners' taxable year 2005 that was signed by petitioners and dated March 18, 2006 (petitioners' 2005 return)

and various documents in support of certain entries in that return.

Form 433-A contained several sections identified as sections 1 through 9.[6]  In response to certain questions in section 1 of petitioners' Form 433-A, petitioners indicated that Mr. Dailey was born on December 14, 1950, and that Ms. Dailey was born on November 14, 1955.

In section 1 of petitioners' Form 433-A, petitioners provided the responses indicated to the following questions:

6.  List the dependents you can claim on your tax return: * * *

| First Name | Relationship | Age | Does this person live with you? |
|---|---|---|---|
| * * * | **SON** | **16** | ☐ No ☒ Yes |
| * * * | **SON** | **23** | ☐ No ☒ Yes |

---

[6]Secs. 1 through 9 of Form 433-A requested the following types of information:

| Section | Type of Information Requested |
|---|---|
| 1 | Personal |
| 2 | Business |
| 3 | Employment |
| 4 | Other income |
| 5 | Banking, investing, cash, credit, and life insurance |
| 6 | Financial condition |
| 7 | Assets and liabilities |
| 8 | Accounts/notes receivable |
| 9 | Monthly income and expense analysis |

In response to a question in section 2 of petitioners' Form 433-A, petitioners indicated that they were not self-employed and did not operate a business.

In section 3 of petitioners' Form 433-A, petitioners provided the responses indicated to the following questions:

8.  Your Employer
    **McFadden Farrel** * * *

9.  Spouse's Employer
    **Greenburg Central #7 S Dst**
    * * *

8a. How long with
    this employer?  **2 mos**

9a. How long with this
    employer?  **2 mos**

8b. Occupation **BROKER**

9b. Occupation **Counsellor**

In section 4 of petitioners' Form 433-A, petitioners provided the response indicated to the following question:

10.  Do you receive income from sources other than your
     own business or your employer?  (Check all that
     apply.)

     ☐ Pension   ☐ Social Security   ☒ Other (specify,
       i.e. child support, alimony, rental) **see
       attached**

The attachment to question 10 in section 4 of petitioners' Form 433-A (question 10 attachment) was a statement of Mr. Dailey that indicated:

    I received a check from Executive House for the sale of
    the property and used it to repay past due credit card
    bills, bank overdrafts, insurance payments and other
    living expenses.  See attached letter from them.

The property referred to in the question 10 attachment was a limited partnership interest that Mr. Dailey had in Executive

House Associates and that was purchased from him between January 20 and March 28, 2006, for an amount not disclosed by the record.

In response to certain questions in section 5 of petitioners' Form 433-A, petitioners indicated (1) that they maintained a checking account that had a balance of zero, (2) that they had no investments, (3) that they had two credit cards with total available credit of $185, and (4) that they had life insurance with a cash value of $995.

In section 6 of petitioners' Form 433-A, petitioners provided the responses indicated to the following questions:

17a. Are there any garnishments against your wages?
☒ No ☐ Yes

  *  *  *  *  *  *  *

17b. Are there any judgments against you? ☐ No ☒ Yes
**SEE ATTACHED**

| If yes, who is the creditor? **NY STATE DEPT TAX & FINANCE** | Date creditor obtained judgment 3/28/05 | Amount of debt $**56,867.00** |
|---|---|---|

17c. Are you a party in a lawsuit? ☒ No ☐ Yes

  *  *  *  *  *  *  *

17d. Did you ever file bankruptcy? ☒ No ☐ Yes

  *  *  *  *  *  *  *

17e. In the past 10 years did you transfer any assets out of your name for less than their actual value? ☒ No ☐ Yes

  *  *  *  *  *  *  *

17f. Do you anticipate any increase in household income in the next two years? ☐ No ☒ Yes

> If yes, why will the income increase?  **Both have Tentative Jobs * * ***
>
> How much will it increase?  * * * **See attached**

17g.  Are you a beneficiary of a trust or an estate?
      ☒ No ☐ Yes

  *      *      *      *      *      *      *

17h.  Are you a participant in a profit sharing plan?
      ☒ No ☐ Yes

The attachment to question 17b in section 6 of petitioners' Form 433-A was a copy of a warrant dated March 30, 2005, that was issued by the New York State Department of Taxation and Finance. That warrant indicated that the total amount due from petitioners to the Commissioner of the New York State Department of Taxation and Finance with respect to their taxable years 2002 and 2003 was $53,648.40 and that interest would continue to accrue on that amount at a rate of 6 percent.

The attachment to question 17f in section 6 of petitioners' Form 433-A was a statement of Mr. Dailey that indicated:

> My wife recently completed Masters Education in Coun-
> selling.  She is in a temporary position currently
> being paid $40/day through May. * * * We are hopeful
> that she will receive a permanent position but there
> can be no guarantees.  That would amount to before tax
> and union dues $41,846.  (Currently she is not paid
> when school is on vacation * * *)  Myself, I have
> recently been forced to change employers as a result of
> financial difficulties of my former employer Seaboard
> Securities.  My compensation is based solely on commis-
> sion, I have been working at McFadden Farrell & Smith
> for 2 months and total earned compensation totals after
> deductions amounts to only $1,175.

I am hopeful that I will be able to develop a stable stream of income but to date I have not reached any of my personal goals and thus am reluctant to guess on short term income. The firm itself is weighing whether to remain open given it ever rising expenses. [Reproduced literally.]

In response to certain questions in section 7 of petitioners' Form 433-A, petitioners indicated that they owned the following three automobiles: (1) A 1988 "BMW 320i" that had a current value of $800, (2) a 1990 Lexus "LS 400" that had a current value of $1,000, and (3) a 1998 "Volks Passat" that had a current value of $800.

In response to certain questions in section 7 of petitioners' Form 433-A, petitioners indicated (1) that they owned their residence, (2) that they had purchased their residence in March 1983 for $535,000, (3) that the current value of their residence was between $1,400,000 and $1,600,000,[7] and (4) that there was a loan balance of $153,700 with respect to their residence.[8] In response to the question in section 7 of petitioners' Form 433-A that requested the name of the lender or lien holder, petitioners

_____

[7]In the stipulation of facts, the parties stipulated that the fair market value of petitioners' residence on the date on which the parties executed that stipulation was more than $1,400,000.

[8]Although petitioners indicated in sec. 7 of petitioners' Form 433-A that they had a loan balance of $153,700 with respect to their residence, as discussed below, that loan balance pertained to certain loans from various family members of Mr. Dailey and did not pertain to petitioners' residence.

referred to an attachment. That attachment was a statement of

Mr. Dailey that indicated in pertinent part:

I currently owe various family members $153,700.00:

        Mother   83 years old           37,200
        Sister   57 [years old] * * *   24,500
        Brother  53 [years old] * * *   84,300
        Brother  45 [years old] * * *    7,700.

        These members have been funding on a weekly and
monthly basis all of our Living Expenses as well medi-
cal bills beginning in January of 2004, as I have
exhausted all my financial assets and could not find
employment.

        They have been under a strain to do this and have
'limited' funds with which to further aid us.  My
children * * * were therefore forced to take out per-
sonal loans and obtain financial aid on their own in
order to attend college.  [Reproduced literally.]

In response to certain questions in section 7 of petition-

ers' Form 433-A, petitioners indicated that they owned personal

assets consisting of furniture and personal effects that had a

current value of $35,000 and jewelry that had a current value of

$5,000.

In section 9 of petitioners' Form 433-A, petitioners listed

various income and expense items.  With respect to the income

items listed in that section, petitioners indicated that they had

total monthly income of $4,587 consisting of Mr. Dailey's wages

of $1,100 and Ms. Dailey's wages of $3,487.  With respect to the

expense items listed in section 9 of petitioners' Form 433-A,

petitioners showed monthly living expenses totaling $7,601 that

consisted of $1,740 for "Food, Clothing, and Misc.", $3,235 for

"Housing and Utilities", $1,153 for "Transportation", $1,080 for "Health Care", and $393 for "Life insurance".

In petitioners' 2005 return that Mr. Dailey enclosed with his March 28, 2006 letter, petitioners claimed petitioners' younger son as a dependent. In that return, petitioners reported total income of $7,277 consisting of (1) Mr. Dailey's wages of $2,000,[9] (2) taxable interest of $5, (3) a distribution of $3,374 from an IRA, and (4) partnership income of $1,898 with respect to Mr. Dailey's limited partnership interest in Executive House Associates. In petitioners' 2005 return, petitioners claimed total itemized deductions from Schedule A--Itemized Deductions of $40,504 and showed taxable income of zero and total tax of zero.

On March 30, 2006, the settlement officer made the following pertinent entries in her "Case Activity Records":

> Mr. Taxpayer came into the office with his Form 433-A. It was an unscheduled visit. He stated that he really wants a face to face conference. * * * Reviewed CIS [Collection Information Statement] information. The taxpayers appear to be good candidates for CNC [Currently Not Collectible]. They are currently earning very little but have a house with plenty of equity. It is unlikely that on their income they can get a second mortgage. However, this equity makes them poor candidates for an offer. Called Mr. Taxpayer. Addressed conference room issue. Rescheduled face to face for 04/19/2006 @ 10:30 AM. Discussed CNC and IA [Install-

---

[9]Petitioners attached to petitioners' 2005 return Form W-2, Wage and Tax Statement, which showed that during 2005 Mr. Dailey received wages of $2,006.39 from Seaboard Securities, Inc. The record does not explain why petitioners reported only $2,000 of those wages in petitioners' 2005 return.

ment Agreements]. He had some questions but could not ask them at work. Call ended. Plan: Face to face conference with taxpayer on 04/19/2006 at 10:30 AM. [Reproduced literally.]

On or about April 19, 2006, the settlement officer met (April 19, 2006 meeting) with Mr. Dailey and discussed petitioners' Form 433-A and petitioners' financial status as of that date. On April 19, 2006, the settlement officer made the following entries in her "Case Activity Records" with respect to the April 19, 2006 meeting:

Mr. Taxpayer came into Appeals for a face to face conference. Reviewed CIS information. Confirmed his current financial status. He and his wife cannot afford to pay at the moment. However, he is not a good candidate for an offer because he owns a house with equity but does not have circumstances that would currently fit ETA criteria. Explained the NFTL filing is going to be sustained and explained why. Explained CNC and stressed interest will continue to accrue. Discussed options such as reverse mortgage (too young) and selling of his primary residence (he still has a minor in school). CNC is best alternative at the moment. Told him the Service may request updated financials in the future. [Reproduced literally.]

On May 1, 2006, respondent issued to petitioners a notice of determination with respect to, inter alia, petitioners' taxable years 2002 and 2003.[10] That notice indicated in pertinent part:

The filing of the Notice of Federal Tax Lien is sustained by Appeals. However, the balances are to be declared currently not collectible, understanding interest will continue to accrue until full payment or until the collection statutes expire.

---

[10]See supra note 2.

The notice of determination included an attachment that stated in pertinent part:

## Summary and Recommendation

You submitted a Request for a Collection Due Process (CDP) Hearing Form 12153 following the receipt of Letter 3172, Notice of Federal Tax Lien and Your Right to a Hearing under Internal Revenue Code (IRC) Section 6320.  Automated Collection (ACS) issued the notice dated 10/20/2005, allowing you until 11/21/2005 to submit a request for a hearing with Appeals.  ACS received Form 12153 on 11/18/2005.  The CDP request was, therefore, timely as it was made within the timeframe outlined in Letter 3172.

[The settlement officer] * * * received Collection Information Statement Form 433-A from Mr. Dailey on 03/30/2006 and met with him on 04/19/2006.  [The settlement officer] * * * determined the Notice of Federal Tax Lien was filed in accordance with established procedures.  Therefore, the filing of the Notice of Federal Tax Lien is sustained by Appeals.

The negotiation of alternatives to enforced collection resulted in the determination that you cannot currently afford to pay the debts.  Therefore, the balances are to be declared currently not collectible, understanding interest will continue to accrue until full payment is received or until the collection statutes expire.

## Brief Background

You filed your 1999 and 2003 1040 returns timely.  Your 2002 1040 return was received by the Internal Revenue Service (Service) on 04/21/2004. * * * No adjustments were completed on your 2002 and 2003 1040 returns but you did not have sufficient withholding or pay estimated taxes to cover the tax due and you did not remit full payment with the returns.

## Discussion and Analysis

IRC Section 6320 gives a taxpayer the right to a Collection Due Process (CDP) hearing with Appeals in response to the filing of a Notice of Federal Tax Lien (NFTL).  The Service is required to inform a taxpayer

of a lien not more than 5 business days after the date of the filing of Notice of Lien.  A taxpayer must file the hearing request within a 30 calendar day period that begins the day after the conclusion of the 5-day notification period.  A taxpayer who timely requests a hearing has the right to protest an Appeals determination in Tax Court or United States District Court, depending on the type of tax issue.  In certain instances, a taxpayer may return to Appeals after the case has been closed under the "retained jurisdiction" clause in the statute.

A taxpayer may raise any relevant issues related to the unpaid tax including the appropriateness of collection actions, collection alternatives, and spousal defenses as well as to challenge the existence or amount of the tax if (s)he did not receive a Notice of Deficiency for that liability or did not have the opportunity to dispute the tax liability previously.

Appeals is required to:

- Verify that the requirements of any applicable law or administrative procedures have been met;

- Consider issues raised by the taxpayer;

- Efficiently collection taxes while avoiding unnecessarily intrusive collection actions.

Law and Procedure

With the best information available, the requirements of various applicable law or administrative procedures have been met.  Based on transcripts of your accounts, the following was confirmed:

- Assessment was made on the above considered periods per IRC Section 6201 and notice and demand for payment was mailed within 60 days of the assessment as required by IRC Section 6303;

- The filing of the Notice of Federal Tax Lien was not requested until at least 31 days after the issuance of an Urgent Notice (CP 504);

- There was a balance due when the NFTL was filed and Notice of Your Right to a Hearing was issued per IRC Sections 6322 and 6331(a);

- Letter 3172 was sent by certified mail to your last known address no later than 5 business days after the NFTL was mailed for recordation per IRC Section 6320(a);

- The filing of the NFTL was approved by an employee with sufficient delegated authority;

- Collection action was suspended upon receipt of the timely CDP request;

- The Settlement Officer had no prior involvement with this matter in Compliance or Appeals.

Issues Raised by the Taxpayer

You stated on Form 12153 that you were experiencing an economic hardship.  You also mentioned Effective Tax Administration (ETA), which is a type of the offer in compromise.  [The settlement officer] * * * agreed that you are currently suffering an economic hardship.  As such, she determined that declaring the balances currently not collectible would be the best alternative to enforcement at the moment.  She also addressed offer in compromise possibilities although you did not submit offer Form 656.  She explained that because there is sufficient equity in your primary residence to full pay the debts, you are not a good candidate for an offer based on doubt as to collectibility.  Because you are currently underemployed, you do not have the ability to secure the equity to pay the debts.

Economic hardship as it pertains to an ETA offer in compromise means that you have the equity in assets to full pay the debts but have extraordinary circumstances that would warrant acceptance of less than full payment.  Some factors considered include advanced age, the health of dependents, special education needs of said dependents, medical catastrophe, or natural disaster.  These factors do not pertain to your current financial condition.  Therefore, you are not a good candidate for an ETA offer.

You did not raise liability issues.  No other collec-
tion issues were raised.

<u>Intrusiveness versus Efficiency</u>

Because the NFTL was filed properly, its filing is
sustained.  Because you cannot afford to secure equity
in your home to pay the debts and because you cannot
afford to make monthly payments at this time, the
balances are to be declared currently not collectible.
[Reproduced literally.]

On June 5, 2006, petitioners filed a petition commencing

this case.  On July 27, 2006, petitioners filed an amended

petition.  In the amended petition, petitioners alleged in

pertinent part:

I wish to appeal decision to lien home, as it will
cause my family economic hardship.  As a person, seek-
ing financial officer placement, it would almost cer-
tainly hinder me getting a job.

I also wish to appeal 2/05 decisions not to accept
my OIC under ETA.  I wish for the court to find a way
to give us a fresh start without us having to sell our
home.  We believe the facts & exceptional circumstances
of our case justify such a finding based on some of the
following economic hardship, exceptional & special
circumstances, equity, fairness, adverse consequences,
similar granting's, inability to manage affairs, over-
all past compliance, reasonable collection potential
vs. an acceptable OIC amount.

OPINION

Where, as is the case here, the validity of the underlying

tax liability for each of the taxable years 2002 and 2003 is not

properly placed at issue, the Court will review the determination

of the Commissioner of Internal Revenue for abuse of discre-

tion.[11]  See <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).

As we understand it, it is petitioners' position that they qualify for an offer-in-compromise based on effective tax administration and that the Appeals Office abused the Appeals Office's discretion in making the determinations in the notice of determination.[12]

Section 7122(a) authorizes the Secretary of the Treasury (Secretary) to compromise, inter alia, any civil case arising under the internal revenue laws.  Section 7122(c) authorizes the Secretary to prescribe guidelines for the officers and the

---

[11]It does not appear that petitioners are disputing the existence or the respective amounts of petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability.  In fact, petitioners acknowledge the existence of an unpaid tax liability of a substantial amount with respect to each of their taxable years 2002 and 2003.  Assuming arguendo that petitioners were disputing the respective amounts of petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability and that they had challenged the respective amounts of those unpaid liabilities at the Appeals Office hearing with respect to petitioners' Form 12153, a fact which is not established by the record, petitioners have presented no evidence as to why the respective amounts of petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability are incorrect.  Nor have petitioners presented any evidence to establish the respective correct amounts of petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability.

[12]Our discussion of the determinations in the notice of determination pertains to the determinations with respect to petitioners' taxable years 2002 and 2003, and not 1999.  That is because respondent concedes that respondent abused respondent's discretion in making the determinations in that notice with respect to petitioners' taxable year 1999.  See <u>supra</u> note 2.

employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.  The regulations promulgated under section 7122 indicate that the promotion of effective tax administration is a ground for the compromise of a liability (effective tax adminis- tration offer-in-compromise).[13]  Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

Section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., pro- vides:

> (3) <u>Promote effective tax administration</u>.--(i) A compromise may be entered into to promote effective tax administration when the Secretary determines that, although collection in full could be achieved, collec- tion of the full liability would cause the taxpayer economic hardship within the meaning of § 301.6343- 1.[14]

Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., pro- vides:

---

[13]The regulations promulgated under sec. 7122 further indi- cate that doubt as to liability and doubt as to collectibility are grounds for the compromise of a liability.  Sec. 301.7122- 1(b)(1) and (2), Proced. & Admin. Regs.  Petitioners are not claiming that they qualify for an offer-in-compromise on either of those grounds.

[14]Sec. 301.7122-1(b)(3)(iii), Proced. & Admin. Regs., pro- vides that "No compromise to promote effective tax administration may be entered into if compromise of the liability would under- mine compliance by taxpayers with the tax laws."  Respondent does not argue that an effective tax administration offer-in-compro- mise with respect to petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability would undermine compliance by taxpayers with the tax laws.

(4) *Economic hardship*.--(i) *General rule*.--The levy is creating an economic hardship due to the financial condition of an individual taxpayer.  This condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses.  The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer.  Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.

Section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides that, for purposes of determining the taxpayer's reasonable amount of living expenses, any information that is provided by the taxpayer is to be considered, including the following:

(A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing * * *, medical expenses * * *, transportation, current tax payments * * *, alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income * * *;

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

Factors that support a determination that collection would cause economic hardship include, but are not limited to, the following:

> (A) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability, and it is reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition;
>
> (B) Although taxpayer has certain monthly income, that income is exhausted each month in providing for the care of dependents with no other means of support; and
>
> (C) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and liquidation of those assets to pay outstanding tax liabilities would render the taxpayer unable to meet basic living expenses.

Sec. 301.7122-1(c)(3)(i), Proced. & Admin. Regs.

Respondent has prescribed procedures in the Internal Revenue Manual (IRM) that are consistent with section 7122 and the regulations thereunder in order to determine whether an effective tax administration offer-in-compromise based on economic hardship should be considered and accepted. Consistent with section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., part 5.8.11.2.1(1) of the IRM (Sept. 1, 2005) provides that an effective tax administration offer-in-compromise based on economic hardship may be considered "When a taxpayers [sic] liability can be collected in full but collection would create an economic hardship".

Also consistent with section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., part 5.8.11.2.1(2) of the IRM (Sept. 1, 2005) defines the term "economic hardship" as it applies to an effective tax administration offer-in-compromise in pertinent part as follows:

> The definition of economic hardship as it applies to Effective Tax Administration (ETA) offers is derived from Treasury Regulations § 301.6343-1.  Economic hardship occurs when a taxpayer is unable to pay reasonable basic living expenses. * * *

In determining whether a taxpayer qualifies for an effective tax administration offer-in-compromise based on economic hardship, part 5.8.11.2.1(3) of the IRM (Sept. 1, 2005), which is consistent with section 301.6343-1(b)(4)(i) and (ii), Proced. & Admin. Regs., provides that the taxpayer's financial information and special circumstances must be examined.  That part of the IRM further provides that "Financial analysis includes reviewing basic living expenses as well as other considerations."  IRM pt. 5.8.11.2.1(3) (Sept. 1, 2005).

In reviewing a taxpayer's basic living expenses, part 5.8.11.2.1(4) of the IRM (Sept. 1, 2005), which is consistent with section 301.6343-1(b)(4)(ii)(B), Proced. & Admin. Regs., provides in pertinent part:

> Basic living expenses are those expenses that provide for health and welfare and production of income of the taxpayer and the taxpayers [sic] family. * * *

Part 5.8.11.2.1(5) of the IRM (Sept. 1, 2005) provides that, in addition to a taxpayer's basic living expenses, other factors that are to be considered that impact the taxpayer's financial condition include, but are not limited to, the following:[15]

- The taxpayers [sic] age and employment status,

- Number, age, and health of the taxpayers [sic] dependents,

- Cost of living in the area the taxpayer resides, and

- Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster.

Part 5.8.11.2.1(11) of the IRM (Sept. 1, 2005) provides that

The existence of economic hardship criteria does not dictate that an offer must be accepted. An acceptable offer amount must still be determined based on a full financial analysis and negotiation with the taxpayer. When hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance.

According to part 5.8.11.2.1(10) of the IRM (Sept. 1, 2005),

an acceptable offer amount is determined by analyzing the financial information, supporting documentation, and the hardship that would be created if certain assets, or a portion of certain assets, were used to pay the liability.

Consistent with section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., part 5.8.11.2(5) of the IRM (Sept. 1, 2005) pro-

---

[15]The factors listed in pt. 5.8.11.2.1(5) of the IRM (Sept. 1, 2005) are some, but not all, of the factors listed in sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. That part of the IRM provides that "Other factors may be considered in making an economic hardship determination." IRM pt. 5.8.11.2.1(5) (Sept. 1, 2005).

vides that, before an effective tax administration offer-in-compromise may be considered, the following three factors must exist:

a.  A liability has been or will be assessed against taxpayer(s) before acceptance of the offer.

b.  The net equity in assets plus future income or reasonable collection potential (RCP) must be greater than the amount owed.

c.  Exceptional circumstances exist, such as the collection of the tax would create an economic hardship * * *.

In the notice of determination, the Appeals Office determined (1) that respondent assessed a liability with respect to each of petitioners' taxable years 2002 and 2003 and (2) that the net equity in petitioners' residence was greater than the total amount of petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability.  Thus, the Appeals Office implicitly determined in that notice that the first two requirements set forth in part 5.8.11.2(5) of the IRM (Sept. 1, 2005) for considering an effective tax administration offer-in-compromise were met with respect to those unpaid liabilities.

In the notice of determination, the Appeals Office agreed with the position of petitioners in petitioners' Form 12153 and determined that they were "suffering an economic hardship".[16]  By

_____

[16]In determining in the notice of determination that petitioners were suffering an economic hardship, the Appeals Office determined in that notice that they were underemployed and that
(continued...)

determining in the notice of determination that petitioners were suffering an economic hardship, the Appeals Office implicitly acknowledged (1) that they were unable to pay their reasonable basic living expenses, see sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; IRM pt. 5.8.11.2.1(2) (Sept. 1, 2005), and (2) that the payment of petitioners' unpaid 2002 liability and petition- ers' unpaid 2003 liability would cause petitioners an even greater economic hardship than they were already experiencing.

Since the Appeals Office determined in the notice of deter- mination that petitioners were suffering an economic hardship, it appears that the Appeals Office should have determined that the third requirement set forth in part 5.8.11.2(5) of the IRM (Sept. 1, 2005) for considering an effective tax administration offer- in-compromise was met with respect to petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability, i.e., "Excep- tional circumstances exist, such as the collection of the tax would create an economic hardship".  However, the Appeals Office did not make that determination.  Instead, the Appeals Office determined in the notice of determination that petitioners were

---

[16](...continued)
they did "not have the ability to secure the equity [in their primary residence] to pay the debts."  In addition, in the settlement officer's "Case Activity Records", the settlement officer indicated (1) that petitioners were "earning very lit- tle", (2) that it was unlikely that they would be able to obtain a "second mortgage" with respect to their residence, and (3) that they were unable to sell their residence because they had a minor living with them who was in school.

not a "good candidate" for an effective tax administration offer-in-compromise[17] and that "declaring the balances currently not collectible would be the best alternative to enforcement at the moment."[18]

The record is unclear as to why the Appeals Office determined in the notice of determination that petitioners were not a good candidate for an effective tax administration offer-in-compromise.[19] The only explanation in the notice of determination for that determination is:

> Economic hardship as it pertains to an ETA offer in compromise means that you have the equity in assets to full pay the debts but have extraordinary circumstances that would warrant acceptance of less than full payment. Some factors considered include advanced age,

---

[17]In petitioners' Form 12153, petitioners placed the settlement officer on notice that they were seeking an effective tax administration offer-in-compromise. Nonetheless, the settlement officer did not ask petitioners in her February 24, 2006 letter to submit to her Form 656, Offer in Compromise, and petitioners did not submit that form to her. The record does not establish that at any time after the settlement officer sent petitioners that letter she asked them to submit to her Form 656.

[18]A balance may be declared currently not collectible when, inter alia, "collection of the liability would create an undue hardship for taxpayers by leaving them unable to meet necessary living expenses". IRM pt. 5.16.1.1(2) (Sept. 19, 2005).

[19]The Appeals Office did not determine in the notice of determination that petitioners did not offer an acceptable amount to compromise petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability on the basis of effective tax administration. See IRM pt. 5.8.11.2.1(11) (Sept. 1, 2005). Instead, it appears that the Appeals Office determined that petitioners were not a good candidate for an effective tax administration offer-in-compromise regardless of what might constitute such an acceptable amount. See supra note 17.

the health of dependents, special education needs of said dependents, medical catastrophe, or natural disaster. These factors do not pertain to your current financial condition. * * *

In determining in the notice of determination that petitioners were not a good candidate for an effective tax administration offer-in-compromise, the Appeals Office appears to have considered at least the following factors: "advanced age, the health of dependents, special education needs of said dependents, medical catastrophe, or natural disaster." According to the Appeals Office, those factors did not "pertain to * * * [petitioners'] current financial condition." Even if the Appeals Office were correct that the factors listed in the notice of determination and quoted above did not "pertain to * * * [petitioners'] current financial condition", the record is unclear as to whether the Appeals Office considered any other factors or circumstances that might impact petitioners' financial condition, which it was permitted to do, see IRM pt. 5.8.11.2.1(5) (Sept. 1, 2005). For example, the record is unclear as to whether the Appeals Office considered (1) the ability of Ms. Dailey and Mr. Dailey, who at the time they submitted petitioners' Form 433-A were 50 years old and 55 years old, respectively, to earn sufficient income to pay petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability as well as their reasonable basic living expenses; (2) the impact that a tax lien on petitioners' residence might have on Mr. Dailey's ability to obtain a

position as a stockbroker or a real estate agent[20] or a similar position and to earn an amount of income that, when added to the amount of income from Ms. Dailey's position, was sufficient to pay those unpaid liabilities as well as those expenses; (3) the impact that petitioners' payment of the medical bills attributable to the serious health problems of petitioners' daughter and petitioners' older son might have on petitioners' financial condition, even though those children may not qualify as petitioners' dependents for tax purposes; and (4) the impact that the serious health problems of petitioners' daughter and petitioners' older son might have on petitioners' ability to earn sufficient income to pay petitioners' unpaid 2002 liability and petitioners' unpaid 2003 liability as well as their reasonable basic living expenses.[21]

On the record before us, we are unable to decide whether we should sustain the determinations in the notice of determination with respect to petitioners' taxable years 2002 and 2003.

---

[20]In petitioners' brief, petitioners contend that Mr. Dailey was working as a real estate agent. In respondent's brief, respondent acknowledges that Mr. Dailey began working as a "real estate broker" after he resigned from his position as a stockbroker.

[21]If in determining in the notice of determination that petitioners were not a good candidate for an effective tax administration offer-in-compromise the Appeals Office had considered other factors or circumstances, such as those that we describe above, the record does not establish the other factors or circumstances that it considered and its evaluation of them.

Accordingly, we shall remand this case to respondent's Appeals Office for clarification and for further consideration.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.